UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

KEVIN HOLMGREN,
    *Plaintiff*,

v.

JETRO HOLDINGS, LLC D/B/A RESTAURANT DEPOT,
    *Defendant*.

No. 3:20-cv-01741 (MPS)

**RULING ON MOTION FOR SUMMARY JUDGMENT AND MOTION TO COMPEL ARBITRATION**

**I.    INTRODUCTION**

Kevin Holmgren brings this wrongful termination action against his former employer Jetro Holdings, LLC ("Jetro"), for allegedly firing him in May 2019 over his complaints about health and safety conditions. When Jetro hired Holmgren in April 2019, Holmgren signed an arbitration agreement that required all claims to be submitted to arbitration and to be brought within one year of accrual. In August 2020, Holmgren initiated arbitration regarding his termination with the American Arbitration Association ("AAA"). The AAA administratively closed the case in October 2020 when Jetro failed to respond to its letters to pay a filing fee. Holmgren then filed suit in state court and Jetro removed the case to this Court. Jetro moved to dismiss under Fed. R. Civ. P. 12(b)(1) and 12(b)(6), arguing that Holmgren's claims were untimely; Jetro also moved, in the alternative, to compel arbitration. Because the parties submitted materials outside the Complaint that I would need to consider in deciding the motion, however, I gave the parties an opportunity to submit additional evidence and converted the motion to one for summary judgment. (ECF No. 28); *see* Fed. R. Civ. P. 12(d). As explained

1

below, I GRANT the motion for summary judgment because Holmgren's claims are untimely, and I DENY the motion to compel arbitration as moot.

## II.   FACTS

The following facts are taken from the complaint and the materials submitted with the parties' briefs and are undisputed unless otherwise indicated.

### a. Jetro's Employment of Holmgren

On April 25, 2019, Kevin Holmgren began working at Jetro's Hartford Restaurant Depot warehouse as a stocker. (ECF No. 1, Ex. A ¶ 6). During his employment with Jetro, Holmgren lodged multiple complaints of unsafe work conditions or unsanitary practices. (*Id.* ¶ 10). He alleges that Jetro improperly stored foods, which created safety hazards to the general public, and allowed unsafe work conditions, which posed a risk to employees. (*Id.* ¶¶ 9–10, 13, 15). Holmgren repeatedly notified his supervisors of these hazardous conditions. (*Id.* ¶¶ 10, 12, 14, 16). According to Holmgren, the store manager viewed him as "problematic" because of his complaints about the safety hazards. (*Id.* ¶¶ 16, 18). On May 29, 2019, Jetro terminated Holmgren supposedly in retaliation for his complaints. (*Id.* ¶ 20). Holmgren alleges this constituted wrongful termination under Connecticut statutory and common law. (*Id.* ¶¶ 22-32).

### b. The Arbitration Agreement

When he was hired, Holmgren "received an email informing him that he needed to review various employment documents, including the Arbitration Agreement." (ECF No. 21 at 12). Holmgren signed the Agreement. (ECF No. 23 at 4). The Agreement incorporates the American Arbitration Association's ("AAA") Employment Arbitration Rules and Mediation Procedures (the "AAA Rules"). (ECF No. 21 at 17 (noting that the Agreement controls if "there is any inconsistency between this Agreement and the AAA Rules")). The Agreement provides

that "the exclusive method for resolving 'Claims' … shall be final and binding arbitration in accordance with this Agreement and that neither [the employee] nor Jetro may pursue litigation of any Claim in any court." (*Id.* at 16). The term "Claims" includes "causes of action … by [the employee] … against Jetro … [a]rising out of or related to the employment relationship between [the employee] and Jetro or the termination thereof … [that] would have been [otherwise] justiciable." (*Id.*).

Under the Agreement, any "Claim" must be brought "within **one year** after the occurrence or event that gave rise to the Claim, such as your receipt of notice of the final decision challenged." (*Id.* at 17 (emphasis in the original)). If either party fails to properly initiate arbitration within one year, the "Claim will be waived and forever discharged." (*Id.* at 18). "[N]o court or arbitrator shall have subject matter jurisdiction, power, or authority to consider or rule upon the merits of any Claim for which there has been a failure to Initiate Arbitration timely and, if faced with such a Claim, the court or arbitrator shall dismiss the Claim with prejudice as waived and forever discharged and/or time-barred pursuant to this Agreement." (*Id.*). The Agreement also provides that complaints to administrative agencies, such as the National Labor Relations Board, the U.S. Equal Employment Opportunity Commission, or similar state or local agencies, do not toll the one-year filing requirement. (*Id.*).

If a Claim is presented to a court, the Agreement provides the following:

> In the event a Claim is presented to a court instead of in arbitration as required under this Agreement, in the interests of resolving Claims quickly, efficiently, and fairly, the court shall determine whether this Agreement is enforceable and, in addition thereto, the court shall decide procedural questions that grow out of the Claim and bear on the final disposition of the matter, including without limitation whether there has been a failure to Initiate Arbitration of a Claim timely, resulting in the Claim being waived and forever discharged, without incurring the further expense and delay of referring such question(s) to an arbitrator.

(*Id.*).

To initiate arbitration under the Agreement, the complaining party "must submit a written [] demand [the 'Arbitration Demand'] to the AAA setting forth the Claim." (*Id.* at 17). The AAA Rules require the claimant to include in the Arbitration Demand "the names, addresses, and telephone numbers of the parties; a brief statement of the nature of the dispute; the amount in controversy, if any; the remedy sought; and requested hearing location." (ECF No. 29-1 at 14). Further, the claimant shall include a filing fee and, "simultaneously" with the filing of the Arbitration Demand, "provide a copy of the Demand to the other party." (*Id.*). "Any papers, notices, or process necessary or proper for the initiation … of an arbitration under [AAA's] rules … may be served on a party by mail addressed to the party, or its representative at the last known address or by personal service, in or outside the state where the arbitration is to be held, provided that reasonable opportunity to be heard with regard to the dispute is or has been granted to the party." (*Id.* at 26).

### c. Holmgren's Efforts After Termination

Two days after his dismissal from Restaurant Depot, Holmgren filed a complaint of retaliatory discharge with the Occupational Safety and Health Administration ("OSHA"). (ECF No. 26 at 12); (ECF No. 27 at 2–5). On June 3, 2019, OSHA served the notice on the Hartford, Connecticut facility where Holmgren had worked. (ECF No. 26 at 12); *see* (ECF No. 27 at 2). OSHA dismissed the complaint on May 26, 2020 because of Holmgren's failure to cooperate with the investigation. (ECF No. 27 at 7–9).

Holmgren then sought to raise his dispute in arbitration, filing a complaint with the AAA on August 5, 2020. (ECF No. 23 at 16, 21). In the Arbitration Demand, Holmgren named "JETRO HOLDINGS, LLC D/B/A/ RESTAURANT DEPOT" as the respondent and provided 1524 132nd St., College Point, New York 11326 as the address for Jetro. (*Id.* at 22). Holmgren's

4

lawyer, Attorney Matthew D. Paradisi, attests that he sent the Arbitration Demand "via regular mail to Jetro Holdings, LLC d/b/a Restaurant Depot, 1524 132nd Street, College Point[,] NY 11326." (*Id.* at 16). Attorney Paradisi provides the cover letter and the Arbitration Demand that he sent to the College Point address. (*Id.* at 16–17, 32–41).

On August 18, 2020, the AAA Employment Filing Team mailed a letter requesting Jetro to "pay its share of the filing fee … on or before September 1st, 2020." (*Id.* at 17, 43). The letter is addressed to "Jetro Holdings, LLC" at "15-24 132nd Street," "College Point, NY 11356." (*Id.* at 43). Jetro did not respond to the AAA's letter, and so the AAA Employment Filing Team sent another letter on September 10, 2020,[1] to the same address, asking Jetro to pay the filing fee by September 17, 2020. (*Id.* 17, 46). Again, Jetro did not respond. (*Id.* at 18). On September 30, 2020, Attorney Paradisi filed a "Motion for Entry of Default and Request for Hearing with AAA." (*Id.* at 18, 48). On October 1, 2020, the AAA, instead of entering default, elected to "administratively close[]" the case due to Jetro's failure to submit the filing fee. (*Id.* at 51). The AAA also sent a letter notifying Jetro of the administrative closing of the case to "15-24 132nd Street," "College Point, NY 11356." (*Id.*). After the AAA's closing of the case, Holmgren filed suit in the Connecticut Superior Court on October 16, 2020. (ECF No. 23 at 18); *see* (ECF No. 1 at 5).

Jetro has submitted evidence that it never received notice of the arbitration. Jetro's Senior Vice President of Legal, James G. Fannon, attests that he was "unaware that [Holmgren] had sent a Demand for Arbitration … to AAA." (ECF No. 21 at 13). To the "best of [Fannon's] knowledge," Jetro did not "receive a service copy of the Demand for Arbitration from [Holmgren] or any other person or entity." (*Id.*); *see also* (ECF No. 26 at 13). Fannon also

---

[1] The copy of the letter attached to Holmgren's brief is dated September 3, 2020 (ECF No. 23 at 46), but Attorney Paradisi avers that the letter was sent on September 10, 2020 (ECF No. 23 at 17).

asserts that Jetro never "receive[d] any correspondence from plaintiff's counsel or the AAA regarding the Demand for Arbitration." (*Id.*). Fannon avers that Jetro did not receive a copy of the Motion of Default from Holmgren or any other person or entity. (*Id.* at 13–14).

Fannon provides multiple addresses for Jetro from its website and its corporate filing with the Office of Secretary of the Secretary of the State of Connecticut:

- The address for Jetro's corporate headquarters is 1710 Whitestone Expressway, Whitestone, New York 11357;
- Jetro's regional administrative and purchasing office for the New England, Northeast, and Mid-Atlantic region is located at 13311 20th Ave., College Point, New York 11356;
- Jetro's executive chairman, chief executive officer, and chief financial officer are located at 1710 Whitestone Expressway, Whitestone, New York 11357;
- Jetro's agent for service of process in Connecticut is Cogency Global Inc., which is located at 29 W High St., East Hampton, Connecticut; and
- Jetro's address in its state of formation is 850 New Burton Rd., Ste. 201, Dover, Delaware 19904.

(*Id.* at 13); (ECF No. 27 at 11–12, 14).

Fannon attests that he first learned of the arbitration during this lawsuit. (ECF No. 26 at 13). After the initiation of the lawsuit, on November 25, 2020, Jetro's attorney sent Attorney Paradisi a letter notifying him that Holmgren's claim was subject to the Arbitration Agreement and that Holmgren should withdraw his suit. (ECF No. 23 at 53). In response, Attorney Paradisi sent a letter stating that the "Plaintiff already initiated an arbitration with AAA … and Jetro failed to appear." (*Id.* at 56).

### d. Procedural History

Holmgren first filed a complaint against Jetro in Connecticut Superior Court, Judicial District of Hartford on October 16, 2020. Case No. HHD-CV206134547-S. Jetro removed the case to federal court on the basis of diversity. (ECF No. 1 at 1). On February 16, 2021, Jetro moved to dismiss the complaint as untimely, or in the alternative, to compel arbitration and stay

6

this proceeding. (ECF No. 21 at 1). Because the parties submitted materials outside the Complaint that I would need to consider in deciding the motion, I gave the parties notice that I intended to convert the motion to dismiss to a motion for summary judgment and gave the parties an opportunity to submit additional evidence. (ECF No. 28); *see* Fed. R. Civ. P. 12(d).

### III.  LEGAL STANDARD

"Summary judgment is appropriate only if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014) (internal quotation marks and citations omitted). In reviewing the summary judgment record, a court must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Caronia v. Philip Morris USA, Inc.*, 715 F.3d 417, 427 (2d Cir. 2013). "A genuine dispute of material fact exists for summary judgment purposes where the evidence, viewed in the light most favorable to the nonmoving party, is such that a reasonable jury could decide in that party's favor." *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 843 (2d Cir. 2013). The moving party bears the burden of demonstrating that no genuine issue exists as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). If the moving party carries its burden, "the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

As for the motion to compel, the Federal Arbitration Act ("FAA") allows a party to move to compel arbitration if an arbitrable claim was brought in court rather than in the agreed-to arbitral tribunal. 9 U.S.C. § 4. The Court must grant this motion if it determines the issues at hand are arbitrable and part of a binding arbitration agreement. *Dean Witter Reynolds, Inc. v.*

*Byrd*, 470 U.S. 213, 217 (1985). A question is arbitrable unless "contracting parties would likely have expected a court to have decided the gateway matter [and] they are not likely to have thought that they had agreed that an arbitrator would do so …." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002). "Courts deciding motions to compel apply a standard similar to that applicable for a motion for summary judgment." *Meyer v. Uber Tech., Inc.*, 868 F.3d 66, 74 (2d Cir. 2017) (quotations omitted).

## IV. DISCUSSION

### A. Motion for Summary Judgment

Jetro argues that Holmgren's complaint should be dismissed as untimely because he did not properly file his claim for arbitration within one year of accrual. (ECF No. 21 at 8). Holmgren does not dispute that he signed the Arbitration Agreement and that his claim is covered by the Agreement; indeed, he attempted to initiate arbitration. (ECF No. 23 at 4). Holmgren instead makes two arguments. First, he argues that Jetro materially breached the Agreement by failing to appear for arbitration or pay the filing fees, excusing Holmgren's performance and making the contract unenforceable. (*Id.* at 6, 8–9).[2] Second, Holmgren claims that Jetro waived both its right to arbitrate and "any defense associated with the Agreement's provisions attempting to limit the filing of claims within one year." (*Id.* at 6–10).[3] I will first address the waiver issue before turning to material breach and timeliness.

### i. *Waiver*

---

[2] Holmgren does not explain why a material breach of the Agreement would make it unenforceable.

[3] Holmgren also argues that under *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 637 (1985), the one-year time limitation impermissibly waives the plaintiff's right to pursue statutory remedies. (ECF No. 23 at 10). This argument fails because, as Jetro points out (ECF No. 26 at 9–10), the *Mitsubishi* vindication-of-statutory-rights doctrine does not apply to state law, which is the basis for both counts of Holmgren's complaint (ECF No. 1 at 9–10). Rather, "it reflects a judicial concern for respecting competing *federal* statutes." *DeLisle Sales Grp., LLC v. House of Wu, LLC*, No. 20-00819, 2020 WL 7699852 at *5 (D. Conn. Dec. 28, 2020) (emphasis in original).

Holmgren argues that Jetro's defense of untimeliness as to the initiation of arbitration is waived because Jetro has waived its right to arbitrate. (*Id.* at 9). Specifically, Holmgren claims that he "initiated Arbitration in accordance with the Agreement's terms by electronically filing his Demand for Arbitration with AAA, and by contemporaneously forwarding a copy of the same via mail to Defendant." (*Id.* at 7). He then argues that Jetro's failure to respond to the Demand and the AAA letters is conduct "inconsistent with the right to arbitrate" that prejudiced him and that this failure amounts to a forfeiture of the right to arbitrate under the Agreement. (*Id.* at 7). Jetro claims that it never waived its right to arbitrate because it never received the Demand or the AAA letters. (ECF No. 26 at 4).

"There is a strong presumption in favor of arbitration, and waiver of the right to arbitration is not to be lightly inferred." *Thyssen, Inc. v. Calypso Shipping Corp., S.A.*, 310 F.3d 102, 104–05 (2d Cir. 2002) (citation and internal alterations omitted). "The party seeking to establish a waiver of arbitration carries a heavy burden." *Application of ABN Int'l. Cap. Mkts. Corp.*, 812 F. Supp. 418, 420 (S.D.N.Y. 1993). To establish waiver based on a pre-litigation refusal to arbitrate, the plaintiff must prove that the defendant "(i) engaged in conduct that is inconsistent with the right to arbitrate that (ii) prejudiced the plaintiff." *Stanley v. A Better Way Wholesale Autos, Inc.*, No. 17-1215, 2018 WL 3872156, at *6 (D. Conn. Aug. 15, 2018) (citing *Schreiber v. Friedman*, No. 15-6861, 2017 WL 5564114, at *9, *11–12 (E.D.N.Y. 2017)).

Holmgren fails to submit evidence that raises a genuine dispute as to whether Jetro received notice and subsequently ignored his Demand. While Holmgren submits a copy of a cover letter sent with the Demand, his lawyer's affidavit indicating that he sent it, and copies of the AAA's letters, there is no evidence in the record from which a reasonable juror could infer that Jetro actually received the Demand or the AAA's letters. Jetro has submitted two affidavits

from its Senior Vice President of Legal, James Fannon, stating that Jetro did not receive a copy of the Demand from Holmgren nor any of the AAA's letters. (ECF No. 26 at 13); (ECF No. 21 at 13). Holmgren has submitted no evidence to the contrary and has not disputed the veracity of Fannon's averments. Nor has he sought to take discovery on the issue. *See* Fed. R. Civ. P. 56(d) (allowing non-moving party to seek discovery in response to motion for summary judgment where it shows that "it cannot present facts essential to justify its opposition").[4]

Further, Holmgren fails to submit any evidence indicating that the Demand and the AAA letters were sent to Jetro's headquarters, its last known address, or any persons with knowledge of the dispute. Under the AAA Rules, the claimant must "provide a copy of the Demand to the other party." (ECF No. 29-1 at 14). Notices for the initiation of arbitration "may be served on the party by mail addressed to the party, or its representative, at the last known address or by personal service." (*Id.* at 26). Jetro has submitted evidence showing the addresses for its headquarters, its regional administrative and purchasing offices, and its designated agent for service in Connecticut. (ECF No. 27 at 11–12, 14). Holmgren's OSHA complaint against Jetro was mailed to its Hartford facility at 465 Reverend Moody Overpass, Hartford, CT 06120. (*Id.* at 2). None of these addresses match the addresses to which Attorney Paradisi or the AAA sent the Demand or letters. (ECF No. 23 at 32, 43, 46, 51). Attorney Paradisi sent the Demand to 1524 132nd St., College Point, NY 11326, and the AAA sent the letters regarding the filing fees to 15-24, 132nd St., College Point, NY 11326. (*Id.* at 16, 32, 43, 46, 51). Holmgren does not dispute the addresses provided by Jetro are accurate nor does he argue that the addresses to which he and the AAA sent the Demand and letters were Jetro's "last known address." There is

---

[4] Holmgren did not respond to the Court's order (ECF No. 28) inviting the parties to submit additional evidentiary material in support of their positions. Nor did he request to take further discovery or submit an affidavit under Rule 56(d).

no evidence in the record from which a reasonable juror could infer that Jetro actually received the Demand or that the Demand or the AAA letters were sent to a recognized address for Jetro. *See* (ECF No. 27 at 2, 11–12, 14). Holmgren falls far short of his "heavy burden" to establish waiver because he has failed to submit any evidence suggesting that Jetro was actually aware of the Demand. "Waiver is the intentional relinquishment of a known right." *Burns v. Imagine Films Ent., Inc.*, No. 96-7785, 1997 WL 100896, at *3 (2d Cir. Mar. 6, 1997) (finding no waiver of an arbitration agreement when the defendants were unaware that the relevant agreement permitted them to arbitrate the dispute). Jetro cannot have waived its right to arbitrate by failing to respond to a Demand it did not know about.

Holmgren likens his case to *Stanley v. A Better Way Wholesale Autos, Inc.*, 2018 WL 3872156. *Stanley* is distinguishable, however, because, in that case, the defendant never claimed to be unaware of the plaintiff's arbitration demand and there was affirmative evidence that the defendant's refusal to respond to arbitration notices was strategic. *Stanley*, 2018 WL 3872156, at *7 ("In the absence of any other explanation in the record, [defendant's] repeated failures to respond to the AAA or pay the required fees, followed by its opportunistic reversal after the AAA's decision to terminate the dispute and its current attempt to force Stanley to arbitration before a different body, smack of 'an intentional pattern of gamesmanship and delay.'" (citation omitted)). Thus, in *Stanley*, there was a basis in the record to conclude that the defendant had *intentionally* given up its right to arbitrate. In contrast, Holmgren has failed to show such a basis, and thus has failed to carry his "heavy burden" of showing a waiver of the right to arbitrate.

    *ii.*    *Material Breach*

Holmgren also argues his performance is excused under the Agreement because Jetro materially breached by ignoring the Demand for Arbitration and the AAA's letters. (ECF No. 23 at 6). "Under contract law, it is well settled that a material breach by one party discharges the other party's subsequent duty to perform on the contract." *Weiss v. Smulders*, 313 Conn. 227, 263 (2014). "In determining whether a failure to render or to offer performance is material, the following circumstances are significant: (a) the extent to which the injured party will be deprived of the benefit which he reasonably expected; (b) the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived; (c) the extent to which the party failing to perform or to offer to perform will suffer forfeiture; (d) the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances; [and] (e) the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing." *Bernstein v. Nemeyer*, 213 Conn. 665, 672 n.8 (1990) (quoting Restatement (Second), Contracts § 241 (1981)) (internal quotation marks omitted).

Before applying these factors, however, I consider another, related principle of contract law, which likewise comes from the Restatement: "Except as stated in [Section] 240 [which involves a situation neither party argues is applicable here], it is a condition of each party's remaining duties to render performances to be exchanged under an exchange of promises that there be no uncured material failure by the other party to render any such performance due at an earlier time." Restatement (Second) of Contracts § 237. To respond to the Arbitration Demand, Jetro had first to receive it, and as noted, the only evidence on this point in the record indicates that it did not. Holmgren's providing notice of the Demand to Jetro was a condition of Jetro's duty to arbitrate Holmgren's claims. Specifically, the Arbitration Agreement and the

incorporated AAA Rules required Holmgren to "provide a copy of the Demand to the other party" when initiating the arbitration.  (ECF No. 29-1 at 14); *see* (ECF No. 21 at 17).  Based on this record, no reasonable juror could infer that Holmgren performed this obligation because "provid[ing] a copy … to the other party" implies receipt by the other party.  As discussed above, Holmgren has failed to rebut Mr. Fannon's sworn averments that Jetro never received a copy of the Demand or the AAA's letters.  (ECF No. 26 at 13); (ECF No. 21 at 13).  Nor has Holmgren provided any evidence that Jetro should have received the Demand or the AAA's letters.  To the contrary, the evidence in the record suggests those communications were not sent to Jetro's headquarters, its last known address, or any persons with knowledge of the dispute.  Therefore, Holmgren has failed to show that he has performed his obligations under the Agreement, and I need not reach the issue of whether Jetro's alleged breach was material.  *See Weiss*, 313 Conn. at 265.

     I address materiality nonetheless and conclude that, even if there was a breach by Jetro, it was not material.  Consideration of the "material breach" factors recited above weighs in favor of Jetro and against Holmgren.  First, "the benefit" Holmgren "reasonably expected" was fulfillment of his right to arbitrate in accordance with the terms of the Agreement, which include the one year filing provision.  Because I ultimately conclude that the one year filing provision bars his claims—and do not believe that any arbitrator could have reached a different conclusion—Holmgren has not been "deprived" of this benefit and I need not consider the question of "adequate compensation" for such a deprivation.  Next, had I concluded on this record that Jetro had materially breached—and that that breach precluded it from relying on the one year limitation period—then Jetro would surely have suffered a "forfeiture"; Jetro devoted no fewer than five paragraphs of the Agreement to the one year limitation period and thus

apparently viewed the repose of claims older than one year as a critical benefit of the Agreement. Depriving it of that benefit would work a forfeiture in the sense that Jetro would be exposed to a liability that it contracted to avoid. The issue of "cure" does not really apply here, except to the extent that Jetro has shown (for example, by moving in the alternative to compel arbitration) that it is willing to engage in the arbitration Holmgren originally sought to initiate. Finally, there is no evidence of bad faith on the part of Jetro. I thus conclude that even if Jetro breached the Agreement, its breach was not material.

### iii. Timeliness

Because there has been no waiver of the right to arbitrate or material breach discharging Holmgren of his duties under the Agreement, I must also decide the related question whether Holmgren's claims are untimely under the Agreement. The Agreement commits that issue to the Court under these circumstances:

> In the event a Claim is presented to a court *instead* of arbitration as required under this Agreement, in the interests of resolving Claims quickly, efficiently, and fairly, the court shall determine whether this Agreement is enforceable and, in addition thereto, the court shall decide procedural questions that grow out of the Claim and bear on the final disposition of the matter, including without limitation whether there has been a failure to Initiate Arbitration of a Claim timely, resulting in the Claim being waived and forever discharged, without incurring the further expense and delay of referring such question(s) to an arbitrator.

(ECF No. 21 at 18 (emphasis added)). Holmgren argues that this provision does not apply because he has not brought his claims to court "instead" of arbitration but only after his attempt to arbitrate and because of Jetro's failure to respond to arbitration notices. (ECF No. 23 at 10). This is not convincing. "Instead of" just means "in place of" or "rather than." Am. Heritage Dictionary; *see also Rather Than Definition*, Merriam-Webster, https://www.merriam-webster.com/dictionary/rather%20than (last visited Sept. 15, 2021) (listing "instead of" as a definition of "rather than"). And the action before me was plainly brought to court "rather than"

14

to arbitration. Even accepting that Holmgren first tried to initiate arbitration and only filed in court because Jetro failed to respond to arbitration notices, I find that the Agreement commits the decision on the timeliness issue to judicial resolution because the "Claim"—defined by the Agreement as any "claims, causes of action," etc.—has now been "presented to a court" rather than an arbitrator. Further, if I were to accept Holmgren's reading, I would have to refer the timeliness issue to arbitration because, as discussed above, there has been no waiver or material breach and Holmgren's claims plainly fall within the scope of the Arbitration Agreement. Making such a referral, however, would be contrary to the Agreement's stated intent to further "interests [in] resolving Claims quickly, efficiently, and fairly" by having the Court decide the timeliness issue when that issue is presented to the Court. (ECF No. 21 at 18).

As for timeliness, Holmgren fails to present any evidence from which a reasonable juror could infer that his Arbitration Demand—the first time he raised his claims—was timely. The Agreement requires claimants to "submit[] [Claims] to the AAA within **one year** after the Claim accrued," and provides that if a party fails to file a demand within one year, the claim will be waived as time-barred.[5] (ECF No. 21 at 18 (emphasis in original)). Jetro terminated Holmgren's employment on May 29, 2019, (ECF No. 23 at 2–3), and so his cause of action for wrongful termination accrued on that date. Accordingly, Holmgren had until May 29, 2020 to file his

---

[5] Neither party argues that the filing of the OSHA complaint tolled the one year filing period under the Agreement. Under the Agreement, a claimant may file a complaint with the "National Labor Relations Board, the U.S Equal Employment Opportunity Commission, or similar state or local agency," but any such filing does not "satisfy, expand, extend, or otherwise affect" the one year deadline. (ECF No. 21 at 18). Although the Agreement does not mention OSHA complaints, and OSHA is not a "state or local agency," this does not suggest that the Agreement would allow an OSHA complaint to toll the filing period. The language surrounding the limitations period is strict—it is detailed in five distinct paragraphs (ECF No. 21 at 17–18) and stated in jurisdictional terms that leave no discretion to the court or arbitrator. (*See id.* at 18 ("[N]o court or arbitrator shall have subject matter jurisdiction … to consider … any Claim for which there has been a failure to Initiate Arbitration timely and … the court or arbitrator shall dismiss [any such] Claim ….")). Further, the Agreement describes only a narrow exception for claims and limitations periods that state law does not allow parties to alter. There is nothing in the agreement to suggest that the parties contemplated any other exceptions. (ECF No. 21 at 18 ("Unless and only to the extent otherwise required by the law, the One-Year Filing Procedure shall apply to all Claims under this Agreement.")).

Demand for Arbitration. He admits he did not file the Arbitration Demand with the AAA until August 5, 2020, over sixty days after his claim had been contractually waived. (ECF No. 23 at 21). Therefore, his claims are untimely under the Agreement and, by operation of the Agreement, "waived and forever discharged." (ECF No. 21 at 18). I therefore grant Jetro's motion for summary judgment.

### B. Motion to Compel Arbitration

Because I find that Holmgren's Demand for Arbitration was untimely, Jetro's motion to compel arbitration is moot. Therefore, I deny Jetro's motion to compel arbitration as moot.

### V. CONCLUSION

For the reasons discussed above, the Court GRANTS summary judgment to Jetro on the ground that Holmgren's claim was untimely and DENIES as moot Jetro's motion to compel arbitration. The Clerk is directed to close this case.

IT IS SO ORDERED

/s/

Michael P. Shea, U.S.D.J.

Dated:     Hartford, Connecticut

           September 17, 2021